# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                                          No. CR 08-964  JC
                                                                          MJ 07-2235

JORGE MARRUFO-RUIZ,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Notice of Appeal of Detention Order, filed January 10, 2008 (Doc. 26)("Notice of Appeal").  The Court held a hearing on February 1, 2008.  The primary issues are: (i) whether Defendant Jorge Marrufo-Ruiz poses a risk of non-appearance that cannot be eliminated or mitigated by conditions of release that the Court could impose; and (ii) whether Marrufo-Ruiz poses a risk of danger that conditions of release cannot eliminate or mitigate.  Because the Court cannot square Marrufo-Ruiz's statements to Pretrial Services with his aunt's statements to Pretrial Services, and because the Court is concerned that he has not been recently residing with his mother in Corinth, Texas as he has reported, the Court will dismiss the appeal and affirm the United States Magistrate Judge's Detention Order.[1]

## FACTUAL BACKGROUND

On November 24, 2007, Special Agent Alberto Chavez prepared an affidavit, which is

---

[1] The Court is aware that this case has moved on since it orally affirmed Marrufo-Ruiz' detention.  Marrufo-Ruiz has been sentenced and released.  The Court, however, believes that it is important to complete this opinion and to justify its decisions; and so is issuing this opinion.  The time-frames and ages mentioned in this opinion are accurate as of the time of the Court's oral ruling and not necessarily as of the time of the entry of this opinion.

attached to the Criminal Complaint in this matter.  See Criminal Complaint at 2, filed November 24, 2007 (Doc. 1)("Affidavit").  The facts the Court lays out are drawn from that information contained in that affidavit.

On the afternoon of November 22, 2007, Border Patrol agents patrolling New Mexico Highway 146 encountered a gold-colored 2000 Pontiac Sunfire "that appeared heavy laden in the back."  Id.  They recognized the driver as someone who had previously been arrested for narcotics smuggling at the Columbus, New Mexico Port of Entry.  See id.  The driver looked startled when she encountered the Border Patrol agents and attempted to mask her face with her left hand so that she would not be recognized.  See id.  The driver was identified as Lorenza D. Dominguez[2] and was alone in the car, which was registered to her.  See id.  She told the agents that she was a United States citizen.  See id.

The Border Patrol agents obtained verbal consent  from Dominguez-Nevarez to search the vehicle.  The agents searched the car and found in the trunk under a piece of carpet fifty-one pounds of a green leafy substance that field-tested positive for marijuana.  See id.  The agents arrested Dominguez-Nevarez and advised her of her Miranda rights.  See Affidavit.  Dominguez-Nevarez told the agents that another vehicle was immediately behind her and was assisting her in delivering the marijuana to Phoenix, Arizona.  See id.  She also said that Jorge Marrufo had come to her house in Columbus and told her that her car was loaded with the marijuana and that it was time to go to Phoenix.  See id.

A 1999 gold Buick Century matching a description Dominguez-Nevarez gave was spotted two miles south of where Dominguez-Nevarez had been stopped.  See id.  Marrufo-Ruiz was driving

---

[2] Because she has been charged under the name Dominguez-Nevarez, the Court will use that name.

the Buick.  He told Border Patrol agents "that he was having vehicle problems and pulled off the side of the road."  Id.  Marrufo-Ruiz was arrested, and in a post-Miranda interview, stated that he was being paid $2,500.00 to escort Dominguez-Nevarez to Phoenix.  See Affidavit.  He stated that he needed money to return to his home in Texas, that his uncle owned the marijuana in Dominguez-Nevarez' vehicle, and that his uncle had offered him this job so that he could make some money. See id.

## PROCEDURAL BACKGROUND

After their arrest, a Complaint was filed against Dominguez-Nevarez and Marrufo-Ruiz, and the case was assigned to the Honorable Karen B. Molzen, United States Magistrate Judge.  They were both charged with possession with intent to distribute fifty-one pounds of marijuana and conspiracy for the same, in violation of 21 U.S.C. §§ 841 & 846.  See Criminal Complaint at 1. They had their initial appearance and detention hearing before Judge Molzen on November 26, 2007.  At Marrufo-Ruiz' request, an interview with Pretrial Services was ordered, and on the United States' motion, Marrufo-Ruiz' detention hearing was continued until the next day.  See Criminal Clerk's Minutes, entered November 26, 2007 (Doc. 2).  Pretrial Services completed its Bail Report on November 26, 2007.

1. **Pretrial Services' Bail Report.**

In preparing the Bail Report for Marrufo-Ruiz, Pretrial Services interviewed Marrufo-Ruiz and contacted various family members of his in an effort to confirm the information that Marrufo-Ruiz provided to Pretrial Services.

a. **Residence History.**

Marrufo-Ruiz was born in July of 1984 and is twenty-three years old.  He related that he previously resided in Cuauhtemoc, Chihuahua, Mexico from 1984 to 1995; in El Paso, Texas from

1995 to 1999; and in Irving, Texas from 1999 to 2002. Marrufo-Ruiz reported to Pretrial Services that he currently resides in Corinth, Texas, in a home he purchased from his aunt, Rosalina Ruiz. He informed Pretrial Services that he lives with his mother, Obdelia Ruiz-Vasquez, and has been living there for five years. He also informed Pretrial Services that he received lawful permanent-residence status about two years ago. Marrufo-Ruiz stated that he would continue to reside at his reported address in Corinth, Texas if released from custody.

Marrufo-Ruiz' sister, Paulina Marrufo, verified his permanent-resident status, current address, and prior residential information. Pretrial Services then contacted Rosalina Ruiz, who stated -- contrary to Marrufo-Ruiz' reported information -- that she has been making the monthly mortgage payments of $1,600.00 plus the home insurance of $140.00 since August 2007. She related that Marrufo-Ruiz would give her anywhere from $600.00 to $1,600.00 monthly, whenever he could, but not consistently. She stated that Marrufo-Ruiz had moved out of the residence in May 2007, and went to live somewhere in Chihuahua. Not wanting to continue making payments herself, she placed the home up for sale. Pretrial Services also contacted Ruiz-Vazquez, who stated that Marrufo-Ruiz initially went to Cuauhtemoc for twenty-two days, returned for one week, and then went back to Cuauhtemoc, where he has resided since.

Marrufo-Ruiz reported to Pretrial Services that he travels to Cuauhtemoc twice per year, primarily on holidays, to visit his father and brother, and other family members there. He added that he does not possess a passport for travel outside of the United States. Paulina Marrufo verified this information.

### b. **Personal and Family Background.**

Marrufo-Ruiz stated that he is single and has not fathered any children. His parents, Jorge Marrufo-Rubio and Ruiz-Vasquez, both age forty-three, divorced three years ago. He has one

brother -- Ramiro Marrufo-Ruiz, age twenty-five -- who resides in Cuauhtemoc with his father; and two sisters -- Paulina Marrufo, age twenty-one, and Rosalina Marrufo, age twenty-four -- who reside in the Dallas, Texas area (in Irving and Mesquite, Texas). He told Pretrial Services that he maintains a good relationship with his family members. Paulina Marrufo verified Marrufo-Ruiz' familial information. Pretrial Services talked with Ruiz-Vazquez about her taking third-party custody of her son. She stated that she wanted to speak with Marrufo-Ruiz before she decides to assume that responsibility.

   **c.**  <u>**Employment History and Financial Resources**</u>**.**

   Marrufo-Ruiz stated that he has been employed as an electrician for two years with PI Research in Farmers Branch, Texas. Previously he did insulation and drywall work with Rogelio Rubio, a subcontractor in Irving. Before that work, he was a student. Paulina Marrufo verified Marrufo-Ruiz' employment as an electrician, and also disclosed that he previously worked as a cook for six months to a year at Pizza Hut and at the Round Table Restaurant in Corinth, Texas.

   Marrufo-Ruiz provided an estimate of his financial assets and liabilities. He listed two assets: (i) cash of approximately $300.00; and (ii) a 1999 Buick, valued at $6,000.00. He listed two liabilities: (i) a mortgage of $120,000.00; and (ii) a debt of $7,000.00 on a time share. He stated that his monthly income is $1,520.00. He listed four monthly expenditures: (i) mortgage payment of $800.00; (ii) utilities of $400.00; (iii) groceries of $200.00; and (iv) auto insurance of $200.00. Paulina Marrufo was unable to verify Marrufo-Ruiz' financial information. She related, however, that Marrufo-Ruiz also owned a Dodge Durango.

   **d.**  <u>**Health**</u>**.**

   Marrufo-Ruiz reported that he is physically healthy, although he experiences problems with his right knee, which he dislocated in 2004. He added that he is not taking prescribed medication

for his injury and that he is mentally healthy.  At the request of his counsel, Marrufo-Ruiz was not questioned about use of illicit controlled substances or alcohol.  Paulina Marrufo verified Marrufo-Ruiz' health information and stated that Marrufo-Ruiz does not use illegal drugs or alcohol.

e.      **Prior Record.**

Pretrial Services researched local records and the National Crime Information Center database.  That research revealed that, on June 4, 2006, in Krum, Texas, he was charged with Driving While Intoxicated, a Class B Misdemeanor.  Pretrial Services contacted the Denton County District Attorney's Office to confirm that it rejected the case without pretrial diversion.  No further action was taken.

2.      **Proceedings Before Judge Molzen.**

On November 27, 2007, both Dominguez-Nevarez and Marrufo-Ruiz appeared before Judge Molzen for a detention hearing.  Only Marrufo-Ruiz requested release.  Judge Molzen ordered them both detained pending trial.  See Order of Detention Pending Trial (Marrufo-Ruiz), entered November 27, 2007 (Doc. 8); Order of Detention Pending Trial (Dominguez-Nevarez), entered November 27, 2007 (Doc. 11).  Judge Molzen found that Marrufo-Ruiz was both a flight risk and a danger to the community.  In particular, she noted that Marrufo-Ruiz had lied to Pretrial Services. See Criminal Clerk's Minutes, entered November 27, 2007 (Doc. 5)("Minutes").

At the hearing, Marrufo-Ruiz was represented by Mario Esparza, his appointed counsel. After the hearing, Marrufo-Ruiz retained new counsel.  Robert Perez, from El Paso, Texas, filed a motion to proceed pro hac vice and to replace Mr. Esparza as Marrufo-Ruiz' counsel, see Motion to Proceed Pro Hac Vice, filed December 12, 2007 (Doc. 14); Motion for Substitution of Counsel, filed December 12, 2007 (Doc. 15), both of which Judge Molzen granted, see Order Allowing Counsel to Proceed Pro Hac Vice, entered December 13, 2007 (Doc. 16); Order Allowing

-6-

Substitution of Counsel, entered December 13, 2007 (Doc. 17).  A few days later Leon Schydlower entered his appearance as local counsel assisting Mr. Perez.  <u>See</u> Leon Schydlower's Entry of Appearance as Local Counsel, entered December 17, 2007 (Doc. 18).

On December 19, 2007, Dominguez-Nevarez moved for release pending trial, with home detention and a $5,000.00 unsecured bond.  <u>See</u> Motion to Set Conditions of Release ¶ 3, at 2, filed December 19, 2007 (Doc. 19).  Judge Molzen held a bond hearing and ordered Dominguez-Nevarez released subject to a $5,000.00 bond and other conditions, including home detention and electronic monitoring.  <u>See</u> Criminal Clerk's Minutes, entered December 20, 2007 (Doc. 21).  On January 10, 2008, Marrufo-Ruiz appealed his detention, <u>see</u> Notice of Appeal, and the appeal was assigned to Judge Browning.

### 3.        <u>Hearing on Appeal of Detention Order.</u>

The Court held a hearing on the appeal on February 1, 2008.  At the hearing, Stephen Wong, representing the United States, opposed releasing Marrufo-Ruiz.  Mr. Wong argued that Marrufo-Ruiz' conviction is likely and that he has nothing to lose by running.  Mr. Wong also noted that Marrufo-Ruiz admitted that the marijuana belonged to his uncle and that the United States would thus oppose release to his family.

Mr. Schydlower proffered that Marrufo-Ruiz is neither a flight risk nor a danger to the community.  He pointed out that Marrufo-Ruiz has no criminal history except for a DUI that occurred long before, and that, as a permanent resident, he had an incentive to stay and fight the charges against him, whereas fleeing to Mexico only would prevent him from being able to legally come to the United States again.  Mr. Schydlower also noted that he has family and a job in the United States, and that his mother was willing to sign as a third-party custodian.

Ruiz-Vazquez testified at the hearing that she would be willing to act as a custodian of her

son and co-sign a bond.  On cross-examination, she stated that Marrufo-Ruiz had been living with her in Corinth over the past year, but that he visited Mexico recently.  Once, he went after his cousin was in an accident and while there he visited his brother and father.  He also went in August, and Ruiz-Vazquez admitted she did not know what Marrufo-Ruiz was doing in Mexico between August and November.

Special Agent Chavez also testified.  According to Chavez, Marrufo-Ruiz at first said he did not know how marijuana got into Dominguez-Nevarez' car, but later admitted that the marijuana was his uncle's.  Marrufo-Ruiz had also admitted to vacationing in Mexico with his brother and father, both of whom Chavez later discovered had been deported for drug offenses.  Chavez testified that Marrufo-Ruiz' family residing in Cuauhtemoc makes money by dealing drugs.  On cross-examination, Chavez admitted that Marrufo-Ruiz did eventually open up about his activities, but that he did not disclose everything.

Mr. Wong conducted re-direct examination.  Chavez testified that Dominguez-Nevarez was afraid of Marrufo-Ruiz' family and that Marrufo-Ruiz had threatened Dominguez-Nevarez on behalf of his family.  Mr. Schydlower asked that the Court disregard the testimony about threats, arguing that there had been no indication of any threats until now and no reports about any threats.  Mr. Schydlower asserted that Marrufo-Ruiz did not threaten Dominguez-Nevarez.  He also argued that there was going to be a Fourth Amendment challenge to the stop and that the Sentencing Guidelines put Marrufo-Ruiz at a low sentence, so given what he would lose by fleeing, Marrufo-Ruiz had every incentive to stay in the United States and contest the charges against him.  Mr. Wong then gave his final arguments, contending that the Fourth Amendment was not an issue at this stage of proceedings, and arguing that Ruiz-Vazquez would not be able to adequately supervise Marrufo-Ruiz and that Marrufo-Ruiz had been less than forthcoming in her testimony.  The Court then orally

denied the appeal and stated its basic reasons for doing so.  This present opinion more fully explains the Court's holding at the hearing.

## LAW REGARDING PRETRIAL DETENTION

Under the Bail Reform Act of 1984, pretrial detention is required if the judicial officer determines "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e).  In evaluating whether there are conditions of release that will satisfy these requirements, a court is to consider the following factors:

(1) the nature and circumstances of the offense charged . . . ;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including–

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

## ANALYSIS

A central issue on this appeal is whether the Court can believe the representations that Marrufo-Ruiz and his mother have made to Pretrial Services and to the Court about where Marrufo-Ruiz has been recently living and how much time he has been spending in Mexico.  Marrufo-Ruiz has made inconsistent statements to the Border Patrol agents, and his aunt has contradicted

statements he made to Pretrial Services. Pretrial Services and Judge Molzen both made a careful assessment of Marrufo-Ruiz' risk of nonappearance and of danger to others. The Court agrees with their assessment. Based on the factors that Judge Molzen identified and on the factors outlined below, the Court views Marrufo-Ruiz as both a flight risk and a danger to the community. Accordingly, the Court will affirm Judge Molzen's detention of Marrufo-Ruiz and dismiss the appeal.

The Court is most concerned with the risk of nonappearance, primarily on the basis of three factors. First, Marrufo-Ruiz has strong family ties to Cuauhtemoc. He has family living there, including his father and brother, whom he states he visits approximately twice a year. He appears comfortable with traveling to and living in Mexico, and a lack of a passport has not stopped him from making frequent trips to Mexico. It would be relatively easy for Marrufo-Ruiz to flee the United States and to live in Mexico.

Second, there is also strong evidence that Marrufo-Ruiz has been living in Cuauhtemoc recently, or at least spending a significant amount of time there. His sister, Paulina Marrufo, told Pretrial Services that he had gone to live somewhere in Chihuahua in May of 2007. In her conversation with Pretrial Services, Ruiz-Vazquez said that Marrufo-Ruiz had gone to live in Cuauhtemoc again. Even in her testimony at the hearing, she indicated that Marrufo-Ruiz had been in Mexico from August until November and that she did not know what he was doing down there. All this evidence provides a strong indication that Marrufo-Ruiz may have moved back to Mexico and may not be concerned with the problems that would stem from him fleeing the United States to avoid the charges in this case.

Finally, and most importantly in the Court's view, Marrufo-Ruiz' statements to Pretrial Services are contradicted by statements his family members made to Pretrial Services. The primary

discrepancy is between his statements that he was living with his mother in Texas, and his sister Paulina and mother's comments that he had moved back to Mexico.  Additionally, Rosalina Ruiz' statements that he paid money for the mortgage only when he could contradicts Marrufo-Ruiz' statements about purchasing the house from her.  Given these inconsistencies, especially regarding his place of residence, the Court does not believe that it can place much faith in Marrufo-Ruiz' assertion that he will stay in Texas and reside with mother.

The Court is also concerned that Marrufo-Ruiz is a danger to the community.  The Court views Marrufo-Ruiz as a danger based primarily on two factors.  First, the nature of this alleged federal offense is serious, and the evidence in support of the charges appears strong.  Second, there is evidence that Marrufo-Ruiz poses a threat to his co-defendant, Dominguez-Nevarez, who has been released on bail.

In light of these concerns, the Court does not believe that it can impose conditions of release that would reasonably assure Marrufo-Ruiz' appearance or assure the safety of the community.  The Court does not believe that Marrufo-Ruiz' mother would be an adequate custodian.  She is not aware of what her son was doing in Mexico and does not appear to have the ability to control him.  Given Marrufo-Ruiz' comfort with traveling to Mexico, his strong family ties there, and the involvement of at least several members of his family in the drug trade, the Court believes that it cannot fashion appropriate conditions of release.  Accordingly, Marrufo-Ruiz should be detained pending trial.  See 18 U.S.C. 3142(e).  The Court will therefore affirm the Magistrate Judge's Order of Detention and dismiss Marrufo-Ruiz' appeal.

**IT IS ORDERED** that the Honorable Karen B. Molzen's Order of Detention Pending Trial is affirmed and Defendant Jorge Marrufo-Ruiz' appeal is dismissed.

-11-

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Greg J. Fouratt
  United States Attorney
Terri Abernathy
Stephen Wong
  Assistant United States Attorneys
Las Cruces, New Mexico

      *Attorneys for the Plaintiff*

Leon Schydlower
El Paso, Texas

-- and --

Robert J. Perez
El Paso, Texas

      *Attorneys for the Defendant*